IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARCH INSURANCE COMPANY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 19-3289 |
| THE CHARTER OAK FIRE | : | |
| INSURANCE COMPANY | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                                                **August 4, 2020**

Plaintiff Arch Insurance Company claims Defendant Travelers' Indemnity Company of America[1] must reimburse it for money it spent defending several construction companies in state court. Travelers has moved for judgment on the pleadings. The Court will grant Travelers' motion because Travelers is not the state court defendants' primary insurer and it is therefore not responsible for the defense costs.

**BACKGROUND**

Arch and Travelers are both insurance companies. Arch provided general liability insurance to Agate Construction Company, Inc. and Johnston Enterprises, Inc., for a construction project on a pier on the Delaware River. According to the contract Agate signed in connection with the project, Agate had to add the Philadelphia Regional Port Authority and Penn Warehousing and Distribution, Inc., the owner and tenant of the pier respectively, as additional insureds[2] on the Arch insurance policy. Compl. Ex. C (construction contract between Agate and Port Authority) at 130.

---

[1] In the Complaint and the case caption, the Defendant is erroneously named as The Charter Oak Fire Insurance Company.

[2] Additional insureds are distinct from named insureds because they are not signatories to the insurance policy and they are typically do not pay the insurance premiums. They are also typically entitled to less coverage than named insureds.

Agate's contract with the Port Authority required Agate's insurance to act as primary coverage[3] for the Port Authority and Penn Warehousing. *Id.* Arch's insurance policy also stated Arch would provide primary coverage unless there was "[an]other primary insurance available." Compl. Ex. E (Arch's insurance policy) at 51.

Travelers insured Atlantic Concrete Cutting Inc., a subcontractor that Agate hired to work on the construction project. Under Atlantic's subcontract with Agate, Atlantic was required to list Agate as an additional insured on Atlantic's policy with Travelers. Compl. Ex. D (Atlantic's subcontract with Agate) at 7. This subcontract did not state that Travelers would be Agate's primary insurer. *Id.* Travelers' insurance policy generally does not provide primary coverage for additional insureds like Atlantic when another insurance policy covers those organizations. Br. in Supp. of Mot. for J. on the Pleadings, Ex. C (Travelers' insurance policy) at 23 ("[Travelers' insurance] is excess over any valid and collectible 'other Insurance,' whether primary, excess, contingent or on any other basis, that is available to the additional insured. . . ."). However, the Travelers policy specifies Travelers will be primary insurance for additional insureds covered under another policy when two conditions are met: first, the additional insured must be listed as a named insured on the other insurance policy; and second, a "'written contract requiring Insurance' [must] specifically require[] that [Travelers'] Insurance apply on a primary basis" to the additional insured. *Id.* The policy defines a "written contract requiring Insurance" as "that part of any written contract or agreement under which [Atlantic is] required to Include a person or organization as an additional insured." *Id.* at 24. When Travelers is not the primary insurer, it does not have to pay defense costs. *Id.* at 17.

---

[3] When more than one insurer covers the same loss, one insurer typically provides primary coverage while the other insurer provides excess coverage.

Tragically, while he was working on the construction project insured by Arch and Travelers, John Johnson fell into the Delaware River and died. Johnson's estate then sued Agate, Johnston Enterprises, the Port Authority, and Penn Warehousing in the Philadelphia Court of Common Pleas. Arch paid the defense costs for these defendants. Arch then filed this case seeking declaratory judgment. It claims Travelers is responsible for the defense costs because Travelers is the primary insurer for the state court defendants. Travelers now moves for judgment on the pleadings.

**DISCUSSION**

The Court will grant Travelers motion because, after considering the Complaint and the relevant contracts, Travelers is entitled to judgment as a matter of law. A court should grant a defendant's motion for judgment on the pleadings when, accepting all the facts in the complaint as true, "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019). In deciding a motion for judgment on the pleadings, a court may consider documents outside of the complaint only if those documents are "exhibits attached to the complaint, matters of public record, [or] undisputedly authentic documents if the complainant's claims are based upon these documents." *Id.* (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).[4]

The parties have agreed New Jersey law applies to the claims in this case. *See Buck v. Endo Pharm., Inc.*, No. 19-837, 2019 WL 1900475, at *3 (E.D. Pa. Apr. 29, 2019) ("When the parties

---

[4] Arch argues Travelers' motion is premature because discovery has not been completed. This argument is incorrect. A motion for judgment on the pleadings, like a motion to dismiss, is based on the allegations in the complaint and the documents integral to the complaint. The motion does not rely on discovery, and therefore no discovery is necessary before the motion is filed.

3

agree a state's law applies, we apply the agreed-to law."); *see also Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*, 938 F.3d 466, 469 (3d Cir. 2019) (applying New Jersey contract law after noting "[t]he parties agree that New Jersey law applies"). Under New Jersey law, when two insurers dispute who should pay for a claim, a court must look to the language in the insurance contracts. *W9/PHC Real Estate LP v. Farm Family Cas. Ins. Co.*, 970 A.2d 382, 395 (N.J. Super. Ct. App. Div. 2009) ("Where two carriers have responsibility for a claim, the other-insurance clause of each policy must be examined to determine whether there exists language which may govern the contribution each party should make."). In New Jersey, courts interpreting contracts must give legal force to any unambiguous contract language. *Twp. of White v. Castle Ridge Dev. Corp.*, 16 A.3d 399, 403 (N.J. Super. Ct. App. Div. 2011) ("If the [contract] language is plain and capable of legal construction, the language alone must determine the [contract's] force and effect."). Whether a contract's language is clear or ambiguous is "a question of law" to be decided by a court. *Fed Cetera, LLC*, 938 F.3d at 469.

The relevant contract language here is clear: the four state court defendants do not meet the criteria for primary coverage under Travelers' insurance policy. Travelers' policy is the relevant policy here because Travelers is not required to defend any organization that does not have primary coverage under its policy. Br. in Supp. of Mot. for J. on the Pleadings, Ex. C (Travelers' insurance policy) at 17.

Travelers is not the primary insurer for the Port Authority and Penn Warehousing because they are not listed as named insureds on Arch's insurance policy. Under the Travelers policy, Travelers will provide primary insurance coverage to additional insureds only when those organizations are named insureds on the other insurance policy. Br. in Supp. of Mot. for J. on the Pleadings, Ex. C (Travelers' insurance policy) at 23 (stating Travelers will be primary only to

4

"'other Insurance' available to the additional insured which covers that person or organization *as a named insured*" (emphasis added)). Travelers' policy further clarifies it will not provide primary coverage for an entity that is "an additional Insured under such 'other insurance.'" *Id.* As applicable here, this language means the Port Authority and Penn Warehousing could not be insured by Travelers on a primary basis unless they were named insureds on Arch's policy. The Port Authority and Penn Warehousing are not listed as named insureds on Arch's policy. Compl. Ex. E (Arch's insurance policy) at 23 (listing the named insureds). Because the Port Authority and Penn Warehousing are not named insureds on Arch's policy, Travelers is not a primary insurer for those two organizations and Travelers does not have to pay the cost of defending these organizations.

Travelers is also not the primary insurer for Agate and Johnston Enterprises because there is no written contract specifically requiring Travelers to provide primary insurance for these companies. Travelers provides primary coverage only when a "'written contract requiring Insurance' specifically requires that [Travelers'] Insurance apply on a primary basis." Br. in Supp. of Mot. for J. on the Pleadings, Ex. C (Travelers' insurance policy) at 23. The "written contract requiring Insurance" is defined as "that part of any written contract or agreement under which [Atlantic is] required to Include a person or organization as an additional insured." *Id.* at 24. In other words, the part of the agreement which requires Atlantic to provide insurance coverage must also specifically state the coverage is primary. Here, the relevant provision of Atlantic's subcontract with Agate states, "[Atlantic] agrees to procure before commencing Work and maintain at its expense until final acceptance of Work, [insurance] coverage . . . with the Contractor's [Agate's] name endorsed thereon as an additional insured." Compl. Ex. D (Atlantic's subcontract with Agate) at 7; *see also id.* at 2 (defining the "Contractor" as Agate). Not only does

this provision say nothing about primary insurance coverage, it also says nothing about insurance coverage for Johnston Enterprises. Therefore, there is no written contract requiring Travelers to provide primary coverage for Agate or Johnston Enterprises. *See Englert v. The Home Depot*, 911 A.2d 72, 82 (N.J. Super. Ct. App. Div. 2006) (interpreting a Travelers' insurance policy with similar language to the one at issue here and finding the Travelers' insurance was not primary because the written agreement between the contractor and subcontractor did not specify the subcontractor's insurance would be primary).

Despite this clear contract language, Arch incorrectly argues two vague provisions in Agate's subcontract with Atlantic could "specifically require" Travelers' policy to apply on a primary basis.[5] The first provision Arch points to states, "*[w]ith respect to the Work*, the Subcontractor shall assume toward the Contractor all obligations, risks and responsibilities which the Contractor has assumed towards the Owner under the Contract Documents." Compl. Ex. D (Atlantic's subcontract with Agate) at 2 (emphasis added). The plain language of this provision concerns the scope of the work Atlantic will perform, not insurance. In addressing a similarly worded provision the Third Circuit explained the provision "extends under the plain terms of the contract only to 'work,' and not to insurance." *Lafayette Coll. v. Selective Ins. Co.*, 450 F. App'x 144, 148 (3d Cir. 2011). The second provision Arch points to states "Subcontractor [Atlantic] shall

---

[5] Arch also references a certificate of insurance from Atlantic which states the state defendants will be covered on a primary basis, but Arch acknowledges that "a certificate of insurance does not alter the terms of the insurance policy." Pl.'s Sur-reply in Opp. to Mot. for J. on the Pleadings at 5 n.4. Indeed, the certificate itself states "[t]his certificate . . . confers no rights upon the certificate holder. This certificate does not affirmatively or negatively amend, extend, or alter the coverage afforded by the [insurance] policies [listed] below." Pl.'s Opp. to Mot. for J. on the Pleadings, Ex. B. (certificate of insurance) at 2; *see also Quincy Mut. Fire Ins. Co. v. Imperium Ins.*, 636 F. App'x 602, 606 (3d Cir. 2016) (discussing a certificate of insurance with a similar disclaimer and noting "[i]t is unreasonable to rely on a certificate of insurance that explicitly disclaims conferring any rights").

6

conform to and provide the coverages required by the provisions of the General Conditions Section VI (Insurance) of the Master Agreement [the agreement between Agate and the Port Authority]." Compl. Ex. D (Atlantic's subcontract with Agate) at 3. The most natural reading of this provision is that it requires Atlantic to get the type of insurance (e.g., general liability insurance) and amount of insurance specified in the contract between Agate and the Port Authority. This provision does not meet the requirement that it "specifically require" Travelers to insure any organization on a primary basis.

Even if the two provisions Arch references incorporated the whole contract between Agate and the Port Authority, which they do not, Travelers would still not be required to provide primary coverage to the four state court defendants. The contract between Agate and Port Authority requires primary coverage for "[t]he [Port] Authority, the Commonwealth [of Pennsylvania], and the tenants of any facilities affected by the Work, their officers, employees, and agents." Compl. Ex. C (construction contract between Agate and Port Authority) at 130. Neither Agate nor Johnston Enterprises fall under this provision: they are not the Port Authority, the Commonwealth of Pennsylvania, a tenant affected by the work, or an officer, employee, or agent of a tenant. The contract therefore contains no statement about primary insurance for Agate and Johnston Enterprises. While the contract would require primary coverage for the Port Authority and Penn Warehousing (a tenant), Travelers is still not obligated to cover those organizations on a primary basis because, as explained above, they do not meet the separate requirement of being named insureds on Arch's policy.

**CONCLUSION**

Travelers is not the primary insurer for the four state court defendants. Because Arch would be entitled to relief only if Travelers was the primary insurer, Travelers is entitled to judgment as

7

a matter of law. The Court will therefore grant Travelers' motion and enter judgment in favor of Travelers.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.